Good morning, Your Honors. May it please the Court, Brian Ellickson, for Appellant Jesse Field in this Social Security Disability case. Ms. Field's case was rejected or denied by an administrative law judge. That administrative law judge misweighed two physician opinions, one of the treating physician, one of the examining physician. Counsel, two things. First, could you speak a little louder? Absolutely. And the second is I'd like to ask you specifically about the one area that was confusing to me. A lot seems to hinge on whether your client can sit for only four hours, in which case she couldn't perform her past relevant work, or whether she can sit for six hours. And the physicians disagreed about that. But I have some difficulty parsing the reasoning of the ALJ, because it seems completely subjective either way for these physicians to say four hours, six hours. I don't know what they base it on. Well, Judge, to address your question, the judge did give some rationale for why she rejected the four-hour sitting limitation. You're correct that if that limitation were to be adopted with the rest of the judge's RFC finding. But let me ask this question. It's the same thing that troubles me in the record on both sides. The treating physician who opines no more than two hours, but there's no real reasoning there. One has to go back through the record and try to figure out why he said that. You have an examining physician who says four hours, but otherwise finds her in pretty good shape. And you have two reviewing physicians who say, no, it's more than four. And I can't find any reasoning in their opinions either that tells me why they arrived at that number. They just review records and say, well. Yeah. I think Judge Hurwitz is getting to the point that bothers me. The ALJ says, well, these examining and treating physicians don't give a good reason. But then the ALJ credits two people who also don't give any reasons. And so I don't know what to do with that. I think what you go back to is the regulations in effect at this time, 404, 1527C in general, do give greater deference to the opinions of treating physicians first, examining physicians second. Well, but see, that's my problem. And I want to just focus you on it. I think the ALJ does a good enough job saying why I don't credit the opinion of the examining and treating physician, because they're inconsistent with other things. And the examining physician in particular seems to be giving a glowing report right up to where she checks the box that says not up to four hours. But what I can't find is what supports the ALJ's reasoning. What is there in this record other than two opinions of non-examining physicians? Or in your case, what is there in this record that supports that she can't sit up to more than four hours? It's just physicians are giving opinions, but they're not telling us why. And they're giving opinions, and it's important to focus what they're based on. And I'll go back to the examining physician's opinion, because that seems to be the focus of the questioning. Dr. Timbati had performed a comprehensive examination, noted decreased range of motion in the cervical and lumbar spines. We see that in the addendum to the report. I don't believe it's mentioned in the report itself, but there's a table of range of motion findings. She also reviewed medical records. Those medical records included a 2012 MRI indicating nerve root abutment at the right S1 level. And then Dr. Timbati says there's minimal physical or manipulative limited conditions, no spinal tenderness, and no obvious spinal deformities. And so I'm trying to figure out how, based on that examination, Dr. Timbati then says she can't sit more than four hours. And there's nothing in her report that Dr. Timbati, I think it's Dr. Timbati's report that supports that conclusion for me. What is there in the report that gets me to the support for that conclusion? So the dots aren't connected within the four corners of that report, Judge. I mean, I think you can look at the report, and I think the conclusion you walk away from is the one that you've walked away from it with. But what you look at is the fact that this physician also reviewed medical records. This physician also noted decreased range of motion. And this physician, not only did she review medical records, but she reviewed imaging studies, and she also reviewed physical therapy notes that showed greater limitations than were in existence on the day that she examined the individual. Conditions vary from day to day, and I think that longitudinal view informed her opinion. Now, one of the things that the Commissioner notes is that the sitting limitation wasn't explained sufficiently by Dr. Timbati, and perhaps that would have been helpful. I do note that the administration's form that they asked Dr. Timbati to fill out didn't ask for any explanation as to sitting limitations. Perhaps that would have been helpful. But when you look at the report itself, which does note the range of motion findings, when you look at the records that that physician reviewed, including objective examination findings, including decreased strength and positive straight leg raise, I think that's where you arrive at the four-hour sitting limitation. There's also a notation, but it isn't specifically connected to this, about swelling of the ankles and numbness in the feet, which could affect the length of time that one could sit, potentially, but it isn't connected up by the examining doctor. I would agree, Judge, and we see that, we see examples of edema or swelling in the legs at a couple of places in the record. What's notable here is that what the ALJ said when she reviewed that opinion, and it's at ER 23, she says nothing in the examination notes are consistent with the sitting restriction, and that's simply untrue. The range of motion examination findings are consistent with the sitting restriction. The record review is consistent with the sitting restriction, and so the rejection of that part of the opinion simply isn't based on substantial evidence. If I may turn to, if I've answered the questions on Dr. Timbatti, I'll turn to Dr. Baldonado briefly. This is the treating physician who opined to significant limitations that would have precluded sustained work. The administrative law judge offered some rationales. Many aren't defended by the commissioner, but one that was, was the idea that it's not consistent with the medical evidence. Notably, when the administrative law judge discussed that opinion, she cited to one piece of medical evidence and claimed that that piece of evidence illustrated that it wasn't consistent with the record as a whole. That piece of evidence at ER 520-521 noted tenderness to palpation of the lumbar spine, decreased sensation of the legs, positive straight leg raised bilaterally, antalgic or limping gait. The citation simply doesn't say what the ALJ purports it to say. Is the examining, is the treating physician's report consistent with the examining physician's report on those issues? So the treating physician's... In other words, I think when I look at the examining physician's report, Dr. Timbatti seems not to find some of the things that the treating physician found. I think in whole that report from Dr. Timbatti is somewhat more benign than the reports from other neurologists, pain management physicians in the file. That is absolutely true, Judge. But what's notable is that in rejecting Dr. Baldonado's report, the ALJ cites to this record which has notable positive findings. It simply doesn't say what I think the ALJ intends for it to say. So what do you think we should do? Let's assume you prevail. Should we remand for a new hearing? So it depends on where the error lies, Judge. If the error lies with the evaluation of Dr. Baldonado's report, that is, remand for further proceedings would be the appropriate remedy. If the error lies in the evaluation of Ms. Field's symptom testimony or in the evaluation of Dr. Baldonado's report, the treating physician's report, I think a remand for a computation of benefits would be appropriate here. There simply at that point would not be necessarily outstanding issues to be resolved. At hearing, the vocational expert testified that adopting Dr. Baldonado's report, for example, would lead to a finding of disability, and it would sort of moot the need for further proceedings at that point. So it depends on where the error lies. But absolutely, if it's just with Dr. Timbadia, then further proceedings would be appropriate. I would like to save the last minute I have for rebuttal unless there are other questions. You may do that. Good morning. May it please the Court. Seem Modi on behalf of Andrew Saul, Commissioner of Social Security. The Commissioner's non-disability decision in this case should be affirmed because it rests upon a reasonable interpretation of the largely benign objective medical evidence, the probative medical opinion evidence, and claims less than persuasive subjective symptom testimony. Counsel, I'm going to start you at the same place. Sure. The assertions by the last two physicians that the ALJ credits are just as arbitrary, if you will, as the earlier opinions that had a much greater sitting limitation. And it's, you know, I'm starting from the proposition that if she can sit for four hours or less, she can't do her past work. So it matters. And it seems to me that the reasons the ALJ gave for not agreeing with the treating and examining physicians are equally applicable, if not more so, to the reviewing doctors who came later. So that's my concern. Yes, Your Honor. So I think when it comes to the way the ALJ handled Dr. Timbadia's essentially sort of outlier view of her sitting limitations, because as Judge Hurwitz knows, otherwise this examination yielded largely normal findings and endorsed otherwise functional limitations that were less than what the ALJ ultimately found. So I agree that that is sort of an outstanding question. Well, it's not an outlier. I mean, there is stuff in there. There's the range of motion. There's the numbness in the leg, one leg and the feet. And there are things that indicate that sitting for long periods could be problematic. So without characterizing it, why should we allow the ALJ to go with two arbitrary decisions and two other arbitrary decisions where the hierarchy is that the first two are supposed to be given more credence? So, Your Honor, I think the State Agency Reviewing Physicians' view of claimant's functional limitations was not arbitrary because they do cite the specific evidence underlying their view of claimant's ability to sit for up to six hours a day. If you read in the State Agency Reviewing Physicians' reports, they note that to support their view of the claimant's ability to sit, stand and walk, they note first a normal EMG finding, which I think was taken in August 2013. They also note that claimant had improved with Lyrica, had some improvement from her previous fusion surgery, which is not really an issue in this case. And they also cite the normal CE findings from Dr. Tambatia. And so when they, in their narrative summary of their conclusions, they do explain why, how they reached their conclusion. They explain, my problem is this one, they explain why they think the other two physicians erred in their conclusions. But then they come up with opinions of their own. And their opinions are what, six hours? Yes, Your Honor. On what basis? Well, it's... Could it have been seven? Could it have been five? I mean, it's, so what we have in this one by an examining physician, two by reviewing physicians. If I'm right in looking at it that way, what do we do? Well, Your Honor, ultimately when it comes to determining the RFC, the RFC is an administrative finding. It is ultimately up to the ALJ to sift through all the conflicting evidence. That's true. But that's, but the problem is if you have four equally unhelpful determinations, don't the regulations require giving greater weight to the treating and examining physicians than to reviewing physicians who did not examine or treat? Well, Your Honor... Say yes or no question. In this case, Your Honor... If they're all equally lousy or all equally good. Your Honor, the RFC... Isn't there a hierarchy? Yes or no? There is typically a hierarchy, yes, Your Honor. But in this case, the ALJ properly afforded greater weight to the agency reviewing physicians because under this course precedent, that evidence is substantial evidence when it's consistent with other evidence in the record. So let me ask the question differently. Let's assume that you are supposed to give greater weight to examining and treating, but you find reasons not to credit them because they're inconsistent with other things in the record. What are we then left with? Four that have no particular presumption of validity? I think of all the opinions in the case, Your Honor, I think the ALJ did reasonably afford the greatest probative weight to the state agency reviewing physicians because they did have the benefit of reviewing the bulk of the available evidence in the record when issuing their opinion about claimants' ability to perform a limited range of light work. As I note, their conclusions about claimants' ability to perform a range of light work are the review of Dr. Timbadea's consultative examination findings, which, as you noted, Your Honor, were largely benign. They also rely on their review of claimants' treatment records from when she visited, I believe, the CORE Institute and the findings of normal light work. So let me separate my question from separate findings from opinions, if you will, because that's, I think, my difficulty with this case. I don't doubt that the findings that the treating physician and the examining physician made are accurate and in the record. But they arrive at opinions from those findings. I can't find the link between those findings and the opinion, nor can I with respect to the reviewing physicians. So is there a burden on someone here to establish that the opinion is reasonable or not unreasonable? Well, I think under the agency's regulations and the applicable precedent, I think the ALJ reasonably relied on the state agency reviewing physicians as support for the RFC in this case, because, as I mentioned, not only did they have the benefit of the review of the bulk of the record, which under the agency's regulations is a factor to be weighed when weighing an opinion. Beyond that, state agency reviewing physicians are experts in disability evaluation. And so their expertise in the agency's disability programs and being able to review records and other reasons under which to credit their opinions, which is what the ALJ did here. There's another sort of oddity, I thought, in the reviewing physicians. When they weigh the opinion evidence, they don't seem to talk at all about the treating physician anywhere. I mean, the answer is the same, because they say Dr. Timbadia gave too much sitting restriction. It's okay. That's neither here nor there, but... Well, let me try this one more time, because it's what troubles me in the case. Nobody doubts the objective findings of the examining physician and the treating physician. Nobody says, no, no, you say that she had this objective thing, but you're wrong. What the ALJ says is, you made all those findings, but your opinion based on those findings, I don't accept, because I had two other people review the records, and they arrived at different opinions on those findings. Is that a fair summary of that? Yes, sir. Okay. So under those circumstances, do we give any particular weight to the opinions of the treating physician and the examining physician, not just their findings, but their opinions? Well, in this case, the ALJ did, as we noted earlier, they did provide reasons for rejecting the treating physician. Okay, fair enough, and they provided reasons for rejecting them. Now we have two other people who look at exactly the same record. And say, and we conclude from this record that she can sit for more than four hours. Do you have to have some reason for crediting those? In other words, one of my problems with this record is, the two reviewing physicians say, we've looked at the same stuff, and our opinion is six hours. That doesn't come with any presumption, because they weren't examining or treating. So we now have four physicians that have looked at the records and come up with varying opinions. Nobody doubts the objective medical evidence. They just arrive at different opinions based on it. What do we do in a case like that? Well, Your Honor, I think in this case, I think we might be running into the risk of viewing the hierarchy too rigidly. Because it does, the applicable case law and the regulations do allow an ALJ to give greater weight to a reviewing physician's opinion. Whereas here, it is the most consistent opinion with the evidence in this case. And so, as I noted, their opinions, which are grounded in their expertise in evaluating disability claims, they review this evidence and ultimately determine that claimant could sit for six hours and can perform the limited range of light work the ALJ ultimately determined. And that, again, is grounded in the largely benign objective clinical findings, their review of those findings, the normal EMG claimant's statements about improvement with medication. And so, their statements were not, these conclusions were not plucked out of thin air. It was based on their expert review of the record. And the ALJ can properly rely on their expertise in reviewing the record. Are they experts in sitting limitations? Is this the record that just tell me why I should give special deference to these two? You know, because they review sitting cases all the time or something like that? Your Honor, it's simply just based on their familiarity with the program and their just expertise as physicians and their knowledge of the program. And marrying those sort of dual experiences together in evaluating the claim. That is what the ALJ can reasonably rely on when determining the RFC. Thank you, Counsel. Thank you, Your Honor. Mr. Ellickson, you have some rebuttal time. Thank you, Your Honors. Just briefly to touch, take us back to the state agency physicians. Let's look at what they said. They said that Ms. Field got better on medication. She did temporarily and at the time of the hearing, she was being worked up for a spinal cord stimulator. Not exactly evidence of permanent improvement with medication. They indicated that EMG findings were normal. But MRI findings, and this is at ER 476, note scar tissue extending from her prior laminectomy into her left lateral recess where it surrounds the left S1 nerve root. Dr. Cutts, a few months after that, indicates the perineural starring is causing significant radicular symptomology and chronic pain. They say the CE findings are normal, but the CE findings are not normal. There are a range of motion limitations noted by Dr. Timbadia. Dr. Timbadia reviewed other records that noted objective examination findings. So the suppositions of those state agency physicians appear to be incorrect. But not all of them are incorrect. And that's sort of my difficulty with this. I mean, they do look at other parts of the record and say, she seems to have normal, she has no stenosis, and she said that she could sit and it helped relieve her back pain. So there's not, there's not, their opinions are not without basis in the record. It's just difficult to tie those opinions to six hours is my problem. And I think in a situation like this where the panel struggles with weighing those opinions, one looks at the broadest, the broad overview of the regulations, which is in general, to give greater weight to the opinion of the treating physician, because of that longitudinal treating relationship, or to the examining physician because of the one-on-one in-person patient or examining relationship there. And if there are no other questions, I do see I'm out of time. Thank you. Thank you, counsel. We appreciate helpful arguments from both of you. The case just argued is submitted.
judges: Graber, Hurwitz, Miller